## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JANA HAGUE, )<br><br>                      Plaintiff, )<br><br>v.                    )<br><br>HALLMARK CARDS, )<br>INCORPORATED, and )<br><br>UNION SECURITY INSURANCE )<br>COMPANY a/k/a ASSURANT )<br>EMPLOYEE BENEFITS )<br><br>                      Defendants. ) | Case No. 2:10-CV-2166 RDR/KGS |

## DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR TO STAY AND COMPEL ARBITRATION

In support of their Motion To Dismiss[1] And/Or To Stay And Compel Arbitration, Defendants Hallmark Cards, Incorporated ("Hallmark") and Union Security Insurance Company a/k/a Assurant Employee Benefits ("Assurant") offer the following Suggestions:

### INTRODUCTION

In her Amended Petition, Plaintiff alleges (1) a breach of contract claim/Kansas Wage Payment Act ("KWPA") claim based on Hallmark's Short Term Disability ("STD") policy ("STD claim") and (2) an Employment Retirement Income Security Act of 1974 ("ERISA") claim based on Hallmark's Long Term Disability ("LTD") plan ("LTD claim"). Plaintiff's STD claim fails to state a claim against Defendants under Fed. R. Civ. P. 12(b)(6): (a) Hallmark's STD *policy* is not a contract on which Plaintiff can sue and, even if it is, Assurant is not a party

---

[1]In the alternative, Defendants seek judgment as a matter of law for the reasons stated herein.

to any such contract; and (b) STD benefits are not recoverable under the KWPA. Even if (a) or (b) is not correct, then Plaintiff's STD claim is subject to Hallmark's Dispute Resolution Program ("DRP"), which provides that her STD claim must be stayed pending final, binding arbitration of that claim.

Likewise, Plaintiff's LTD claim fails to state a claim against Defendants under Fed. R. Civ. P. 12(b)(6). Plaintiff's LTD claim will not be ripe until her STD claim is resolved and is therefore not properly before the Court; neither Hallmark nor Assurant is a proper party to any ERISA claim Plaintiff can assert; and Plaintiff seeks, at least in part, relief to which she is not entitled under ERISA.

## FACTUAL BACKGROUND

A.     General Facts.

1.     Plaintiff started her employment with Hallmark on January 10, 1984. *See* Affidavit of Gilbert C. Lloyd ("Lloyd Aff.") ¶ 2.a., attached as Exhibit 1.

2.     Hallmark terminated Plaintiff's employment on December 2, 2008. *See* Lloyd Aff. (Ex. 1) ¶ 2.i.

3.     As a Hallmark employee, Plaintiff received a copy of Hallmark's *Career Rewards* booklet, which provides as follows:

> Employment at Hallmark is at-will, which means that either the employee or the company can terminate the relationship at any time and for any reason. . . . [N]othing in this booklet should be construed to alter the at-will relationship between employees and Hallmark.

*See* Company Policy Overview excerpt from *Career Rewards* booklet, attached as Exhibit 2 and authenticated at Lloyd Aff. (Ex. 1) at ¶ 3.a.

B.     Facts Relevant to Plaintiff's STD Claim.

4.     Hallmark's STD policy -- attached as Exhibit 3 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.b. -- is a pay practice, not a plan covered by ERISA. <u>See</u> Lloyd Aff. (Ex. 1) ¶ 2.d.; *see also* Hallmark's Claim Administration Agreement Short Term Disability ("STD"), attached as Exhibit 4 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.c., at Appendix A ("Hallmark's short-term disability ('STD') Policy is a pay practice and not an ERISA-qualified plan.").   Under Hallmark's STD policy, Plaintiff does not have the right to sue either Hallmark or Assurant. *See* Ex. 3 at ¶ 14.[2]   In other words, there is a process for appealing the denial of any claim for benefits, which process is exclusive. *See id.*

5.     Although Hallmark has contracted with Assurant to provide a third party review of any denial of STD benefits, Assurant is not a party to Hallmark's STD policy. *See* Lloyd Aff. (Ex. 1) ¶ 2.d; *see also* Ex. 4.[3]

6.     Contrary to Plaintiff's Amended Petition, neither Plaintiff nor any other Hallmark employee pays any premium for STD benefits; Hallmark fully funds its STD policy. *See* Lloyd Aff. (Ex. 1) ¶ 2.d.

7.     In January 2002, Hallmark adopted a Dispute Resolution Program ("Original DRP") whereby -- in exchange for continued employment -- Hallmark employees, including Plaintiff, agreed to submit all claims to the DRP for resolution, including submitting "covered claims" to final, binding arbitration if not resolved sooner. *See* Original DRP, attached as Exhibit 5 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.d.

---

[2]The foregoing may explain why Plaintiff has attempted to cast her STD claim as a breach of contract/wage payment claim.

[3]Assurant, while an insurance company, does not insure either the STD or LTD benefits provided by Hallmark to its employees.  The only role Assurant plays is as a service provider to Hallmark through an agreement between Hallmark and Assurant.

8.     Plaintiff received the Original DRP, along with additional enclosures, with a December 28, 2001, letter from Ralph Christensen that Hallmark mailed to her and that was not returned as undeliverable. *See* Lloyd Aff. (Ex. 1) ¶ 3.e. *See also* December 28, 2001, letter and enclosures (other than the Original DRP, Ex. 5), attached as Exhibit 6 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.e.

9.     In the Original DRP and the other enclosures to Mr. Christensen's letter, Hallmark specifically advised all employees that by continuing employment after the effective date of the Original DRP, they were agreeing, as a condition of employment, that all covered claims were subject to the DRP and would be finally resolved through binding arbitration. *See* Original DRP (Ex. 5) at 1 ("Special Notice to Employees") and at 2 (*Former Employees and Pending Disputes*); *see also* "Program Highlights" (included as part of Ex. 6) at top of internal page and "Summary of Hallmark Dispute Resolution Program and Answers to Frequently Asked Questions" ("Summary") (also included as part of Ex. 6) at 1 ("Note").

In the Summary, Hallmark additionally advised employees as follows:

**15.     What happens if I file a lawsuit against the company for a workplace dispute?**
If you file a lawsuit, the company will ask the court to dismiss the case and refer it to the Hallmark Dispute Resolution Program.

*See* Summary (included as part of Ex. 6) at 8.

10.     In August 2003, Hallmark amended the DRP ("Amended DRP") to clarify, among other things, that Hallmark was equally bound to submit "covered claims" to final, binding arbitration and that any right to modify or discontinue the DRP was prospective only. *See* Amended DRP, attached as Exhibit 7 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.f. Specifically, *see* Ex. 7 at 4 ((Covered Claims), which provided that the DRP applies to "claims

arising out of the employee's employment that the Company may have against the employee") and Ex. 7 at 2 ("The Company may at its sole discretion modify or discontinue the DRP, provided such modification or discontinuance shall not be effective until sixty calendar days after notice to employees.  Any modification or decision to discontinue the DRP shall have no effect on pending claims . . . .").

11.     As a Hallmark employee, Plaintiff received with her July 18, 2003, bi-weekly direct deposit slip a letter from David E. Hall that informed her of the changes to the DRP and that encouraged her to review the Amended DRP, which was available to her.  See July 2003 letter, attached as Exhibit 8 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.g.[4]

12.     Hallmark additionally includes information about the DRP in several locations, including in its *Career Rewards* booklet, a copy of which all employees receive, and on its intranet, to which all employees have access.  *See* Lloyd Aff. (Ex. 1) ¶ 3.h.; *see also Career Rewards* excerpt, attached as Exhibit 10 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.i.; and Hallmark's "Handling Complaints - The Hallmark Dispute Resolution Program - Policy 604," attached as Exhibit 11 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.j.

13.     In her Amended Petition, Plaintiff asserts a breach of contract/KWPA claim related to the denial of her claim for STD benefits and an ERISA claim related to the denial of her claim for LTD benefits.  *See* Amended Petition, attached hereto as Exhibit 12, at ¶¶ 21-42 and "Prayer for Relief" at pp.10-11.

---

[4]In addition to that letter, Hallmark had advised employees of the pending changes twice through Noon News, a daily publication Hallmark makes available to all employees.  *See* Noon News references, attached as Exhibit 9 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.h.

14.     Because Plaintiff's claims originate after the effective date of the Amended DRP, the Amended DRP applies to those claims. *Compare* Ex. 7 at 4 *with* Plaintiff's Amended Petition (Ex. 12).

15.     Under the Amended DRP, "covered claims" include "claims arising out of the employee's employment that the Company may have against the employee or that the employee may have against the Company and/or individual employees acting within the scope of their employment," including but not limited to "[c]laims for breach of contract"; however, "excluded claims" include "[c]laims for benefits under a Company benefit plan covered by ERISA that are covered by special appeal procedures . . . ." *See* Ex. 7 at 4 (<u>Covered Claims</u> and <u>Excluded Claims</u>).

C.     <u>Fact Relevant to Plaintiff's LTD Claim.</u>

16.     Hallmark's LTD plan is an employee benefit plan covered by ERISA. *See* Lloyd Aff. (Ex. 1) ¶ 2.h. *See also* LTD Plan excerpt from *Career Rewards* booklet, attached as Exhibit 13 and authenticated at Lloyd Aff. (Ex. 1) ¶ 3.k.; *see also* LTD Plan, attached as Exhibit 14 and authenticated at Lloyd Aff (Ex. 1) ¶ 3.k.

17.     To be eligible for LTD benefits, an employee must have been "disabled" for 180 days or the hourly equivalent of six months. Only those absences that are determined to be eligible for STD benefits or workers' compensation benefits count toward the 180-day eligibility requirement. *See* Ex. 13 at 133; Ex. 14 at § 3.3.1.

A R G U M E N T

Plaintiff's STD claim fails to state a claim against Defendants under Fed. R. Civ. P. 12(b)(6), as (a) Hallmark's STD *policy* is not a contract and, even if it is, Assurant is not a party to any such contract; and (b) STD benefits are not wages under the KWPA. Even if (a) and (b)

are not correct, then Plaintiff's STD claim is subject to Hallmark's DRP, which provides that such claim must be stayed pending final, binding arbitration to resolve that claim.

Likewise, Plaintiff's LTD claim fails to state a claim against Defendants under Fed. R. Civ. P. 12(b)(6).  Plaintiff's LTD claim will not be ripe until her STD claim is resolved and is therefore not properly before the Court; neither Hallmark nor Assurant is a proper party to any ERISA claim Plaintiff can assert; and Plaintiff seeks, at least in part, relief to which she is not entitled under ERISA.

## I.      Plaintiff's STD Claim Fails to State a Claim Against Defendants.

Plaintiff's first STD claim is that Hallmark and/or Assurant breached an alleged STD contract. *See* Ex. 12 at ¶¶ 21-42.  Plaintiff's first STD claim fails.

### A.      The STD Policy Is Not a Contract Between Hallmark and Plaintiff.

The essential elements of a breach of contract claim are the existence of a contract between the parties and sufficient consideration to support the contract. *See Navair, Inc. v. IFR Ams., Inc.*, 519 F.3d 1131, 1137 (10th Cir. 2008) (applying Kansas law).  Because neither exist -- nor can exist -- here, this Court should dismiss Plaintiff's breach of contract claim for failure to state a claim.

While no Kansas court has addressed the exact question of whether an STD policy can create a contract, courts in other jurisdictions have concluded it cannot. *See, e.g., Dearman v. Dial Corp.*, No. 4:08-CV-825CAS, 2010 WL 254929, at *4 (E.D. Mo. Jan. 19, 2010) (applying Missouri law); *Wilkes v. Elec. Data Sys. Inc.*, 267 F. App'x 661, 662 (9th Cir. 2009) (applying Arizona law); *Hirth v. Metro. Life Ins. Co.*, 189 F. App'x 292, 293 (5th Cir. 2006) (applying Texas law); *Norberry v. Life Ins. Co. of North Am.*, No. 3:07-1268, 2009 WL 259371, at *11 (M.D. Tenn. Feb. 4, 2009) (applying Tennessee law); *Diehl v. Elec. Data Sys. Corp.*, No. 1:07-

CV-1213, 2008 WL 2705540, at *5 (M.D. Pa. July 10, 2008) (applying Pennsylvania law); *Cooper v. Broadspire Servs., Inc.*, No. 04-5289, 2005 WL 1712390, at *3 (E.D. Pa. July 20, 2005) (applying Pennsylvania law).

Those courts have gotten it right. Generally, employer policies/practices imposed on at-will employees are not enforceable contracts in Kansas. *See Inscho v. Exide Corp.*, 33 P.3d 249, 253 (Kan. Ct. App. 2001); *Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 894 P.2d 909, 917 (Kan. Ct. App. 1995) (personnel rules that are not bargained for cannot alone be basis for contract of employment). Indeed, Kansas law provides that "[e]mployers have latitude to include rules and policies in written instruments by which they intend to run their business without forming an employment contract with their employees; to find otherwise would consequently construe every employment handbook to be a contract for employment, something [the] court has opted not to do." *Sander v. Liberal Animal Hosp., P.A.*, No. 101,260, 2010 WL 348277, at *3 (Kan. Ct. App. Jan. 22, 2010).

Undoubtedly, Kansas follows the common law employment-at-will doctrine. *See Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 821 (Kan. 2003). Under that doctrine, an employee is at-will absent a contract covering the duration of employment. *See Johnson v. Nat'l Beef Packing Co.*, 551 P.2d 779, 781 (Kan. 1976).

Here, there is no such contract, so Plaintiff was an at-will employee for all purposes. To be sure, Hallmark explained that to her in its Company Policy Overview (Ex. 2), which provides as follows: "Employment at Hallmark is at-will, which means that either the employee or the company can terminate the relationship at any time and for any reason."

Given that the parties' mutual intent to be bound is a basic element of contract formation, the conclusion that employer policies imposed on at-will employees are not contracts makes

perfect sense. *See Inscho*, 33 P.3d at 252-53 (an implied employment contract may exist only where the "facts and circumstances show[] a mutual intent to contract."); *see also Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 81 (Kan. 1991).

Relevant factors to consider in determining whether the parties had a mutual intent to contract include: (1) written or oral negotiations; (2) the conduct of the parties; (3) the usages of business; (4) the situation and objective of the parties giving rise to the relationship; (5) the nature of the employment; and (6) any other circumstances surrounding the employment relationship that would make clear an intent to contract. *Inscho*, 33 P.3d at 252. Here, there was no such mutual intent.

One, Hallmark did not negotiate its STD policy with Plaintiff: it merely drafted the policy and provided it to Plaintiff and all other Hallmark employees. Two, it is clear Hallmark lacked intent for its policies to form a contract: Hallmark expressly stated that its policies "should not be construed to alter the at-will relationship between employees and Hallmark." *See* Ex. 2; *see also Kastner*, 894 P.2d at 912-13 (employer lacked intent to form employment contract where it made employee aware of disclaimers in employee handbook stating policies were not intended to create employment contract). Three, paragraph 10 of the STD policy (Ex. 3) gives Hallmark the right to terminate the STD policy. "Where an employer retains the right to modify or eliminate an employee benefit plan at any time, as does [Hallmark], a contract is not created because the employer's disclaimers evidence a clear intention not to create a contract." *Dearman*, 2010 WL 254929, at *4.

Additionally, Hallmark provides its STD policy to employees for free: Hallmark's employees pay nothing for the benefits available there under for those who qualify. *See* Lloyd Aff. (Ex. 1) ¶ 2.d. As such, the STD policy is not a contract. *See Langley v. Daimler Chrysler*

*Corp.*, 407 F. Supp. 2d 897, 917 (N.D. Ohio 2005) (plaintiff failed to establish the existence of a contract for benefits where the benefits were financed "out of the company's general fund" rather than by the plaintiff because the plaintiff provided no consideration); *see also Cooper*, 2005 WL 1712390, at *3 (where the employees pay no premium for the benefit and no monies are deducted from their pay to cover the cost of the benefit, the program is "an employee benefit that is not based on a contractual agreement between [the defendant] and its employees.").

In light of the foregoing, Hallmark's STD policy is not a contract and cannot be construed as a contract. As such, Plaintiff's breach of contract claim based on it fails to state a claim against Hallmark and should be dismissed.

      B.    <u>Assurant Is Not a Party to Hallmark's STD Policy</u>.

Plaintiff's second STD claim is a breach of contract claim against Assurant. *See* Ex. 12 ¶ 21-42. Even if Hallmark's STD policy could be construed as a contract between Hallmark and Plaintiff, Assurant is obviously not a party to that contract. Instead, Assurant is a third party with whom Hallmark contracts to provide a service *to it*. *See* Lloyd Aff. (Ex. 1) ¶ 2.d.

Under the analysis in I.A., there was no offer or acceptance between Plaintiff and Assurant, there was no consideration exchanged between Plaintiff and Assurant, and there certainly was no mutual intent to be bound between Plaintiff and Assurant. With that, Plaintiff cannot state a breach of contract claim against Assurant.

C.   <u>Plaintiff's Kansas Wage Payment Act Claim Fails as a Matter of Law.</u>

Plaintiff's third STD claim is a KWPA claim.  *See* Ex. 12 at "Prayer for Relief" on pp.10-11.  By definition, however, STD benefits are not wages under the Act.  Indeed, Kan. Stat. Ann. § 44-313(c) defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions," and Kan. Admin. Regs. § 40-20-1(d) explains that "other basis . . . include[s] all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee."

Benefits under Hallmark's STD policy do not qualify as wages under that definition because such benefits are not earned as a result of the employee's service.  *See, e.g., Fitzgerald v. City of Ottawa*, 975 F. Supp. 1402, 1407 (D. Kan. 1997) (severance agreement was not "wages" under the KWPA because it was not compensation for services rendered).  Moreover, even if STD benefits were somehow construed as compensation for services, Plaintiff is not entitled to them because she did not meet the conditions for entitlement: she was ineligible under Hallmark's STD policy.  *See Wallace v. Microsoft Corp.*, No. 07-2379-EFM, 2009 WL 1636103, at *6 (D. Kan. June 11, 2009) (plaintiff was not entitled to four-weeks pay under company's family leave policy when he failed to submit proper notice, a condition precedent to receiving leave); *Sweet v. Stormont Vail Reg'l Med. Ctr.*, 647 F.2d 1274, 1281 (Kan. 1982) (vacation pay was not "earned" when plaintiff did not meet the condition precedent of giving two-weeks notice of her resignation).  As such, Plaintiff's KWPA claim fails as a matter of law.

## II.     Plaintiff's STD Claims Are Subject to the DRP.

Hallmark and Plaintiff are parties to an arbitration agreement. *See, e.g.*, Exs. 5 & 7. Under that agreement, the proper forum for Plaintiff's STD claim is arbitration, not this or any other court. *See id.*

Indeed, the United States Supreme Court has clarified that employer/employee arbitration agreements are not only fully enforceable, they are -- in fact -- favored. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 132 (2001) (Stevens, J., dissenting); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991). Accordingly, federal courts situated in Kansas routinely enforce employer/employee arbitration agreements. In fact, two such courts have recently enforced the very arbitration agreement at issue here. *See, e.g., Kenney v. Hallmark Cards, Incorporated*, No. 08-CV-2134-CM, 2009 WL 102682 (D. Kan. Jan. 7, 2009) (attached as Exhibit 15); *see also* Order of Judge Sam A. Crow, U.S. District Judge, in *Rangel v. Hallmark Cards, Incorporated* (attached at Exhibit 16).[5]

---

[5] Other courts are in accord. In fact, courts refuse to enforce employer/employee arbitration agreements only where the agreement is not supported by adequate consideration or is so one-sided it effectively deprives the employee of a fair opportunity to pursue his or her claims. *See, e.g., Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939-40 (4th Cir. 1999) (refusing to enforce arbitration agreement where the employer retained complete control over the selection of the arbitrator and where the *employee's* discovery was limited to one deposition, even though the employee named multiple defendants, but the employer's discovery was not likewise limited); *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1233 (10th Cir. 1999) (refusing to enforce an arbitration agreement that in effect deterred the employee from pursuing claims at all); *Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054, 1058 (11th Cir. 1998) (same). Neither is true here. *See* Ex. 7, which fully protects Hallmark's employees' substantive rights (for example, p.13, ¶ 15: "The arbitrator may grant any remedy or relief that would have been available had the claim been asserted in court, and may issue rulings on any motions that the parties could have asserted in court including, but not limited to, motions for summary judgment, motions to dismiss, motions in limine, and motions for sanctions").

As discussed more fully below, Plaintiff's agreement to both the Original DRP[6] and the Amended DRP -- including the arbitration step included in both -- was supported by adequate consideration.   Further, the DRP generally -- and the arbitration step specifically -- ensures current and former employees a full and fair opportunity to pursue covered claims through the "simplicity, informality, and expedition of arbitration." *Gilmer*, 500 U.S. at 31.   Indeed, even a cursory review of the procedures demonstrates Hallmark has ensured its employees' substantive rights are fully protected throughout the DRP process, including during arbitration.   Accordingly, the DRP -- including the arbitration step -- is fully enforceable.

A.     The FAA Applies to the DRP.

Hallmark's DRP specifically provides that the arbitration step is governed by the FAA and that Hallmark "is engaged in transactions involving interstate commerce . . . ." (Ex. 7 at 5 (Agreement to Arbitrate In Interstate Commerce)).   The United States Supreme Court reminded in *Citizens Bank v. Alafabco, Inc.* that the term "involving commerce" in the FAA is the functional equivalent of the more familiar term "affecting commerce" and therefore signals "the broadest permissible exercise of Congress' Commerce Clause power."   539 U.S. 52, 56 (2003).   Accordingly, the Court held that -- in considering whether an activity "involv[es] commerce" for purposes of the FAA -- courts must examine the entire business enterprise involved, not only the contract between the parties. *See id.* at 57-59

Both national and international in scope, Hallmark's entire business enterprise unquestionably "involv[es] commerce" as the United States Supreme Court has interpreted that

---

[6]In *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15 (Mo. Ct. App. 2008), the Missouri Court of Appeals for the Western District refused to enforce the Original DRP.  For the reasons set forth in *Kenney*, 2009 WL 102682, at *3 (Ex. 15), this Court should refuse to follow *Morrow*, especially with respect to the Amended DRP applicable to Plaintiff's claims.

term.  Accordingly, the FAA applies to the DRP.  *See id.*; *see also Circuit City Stores, Inc.*, 532 U.S. at 123.

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer*, 500 U.S. at 24.  Indeed, the FAA's primary purpose is to enforce private contractual agreements to arbitrate. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  The FAA's primary purpose applies equally to employer/employee arbitration agreements as it does to other arbitration agreements. *See Circuit City Stores, Inc.*, 532 U.S. at 122.

In short, the FAA declares a "liberal federal policy favoring arbitration agreements" (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) and establishes "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitration." *Id.* at 24-25.  Under the FAA, the DRP's arbitration step is avoidable only upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  As explained fully below, no such grounds exist here.

B.    The DRP -- Including the Arbitration Step -- Is an Enforceable Contract

At this stage, the Court's role is to determine only whether there is an agreement that commits Plaintiff's claims to arbitration. *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). If there is such an agreement, then the Court must stay the lawsuit and order the parties to arbitration. *See* 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 (holding state court must grant a stay).

To decide whether such an agreement exists, the Court must look to state contract law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In so doing, the Court may apply state law only to the extent it applies to contracts in general, i.e., the Court may not create law applicable only to arbitration agreements and may not ignore law otherwise applicable to contracts. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995).

1.    *The DRP -- Including the Arbitration Step -- Is a Valid Contract.*

"Under Kansas law, the question whether the parties have created a binding contract depends on their intent . . . ." *Kerr v. Dillard Store Servs., Inc.*, No. 07-2604-KHV, 2008 WL 2152046, at *3 (D. Kan. May 21, 2008). Here, that intent is clear.

Through both the Original DRP and the Amended DRP, Plaintiff agreed -- as a condition of her continued employment with Hallmark and, in the Amended DRP, in exchange for Hallmark's separate agreement to be bound by the DRP -- to submit covered claims to the DRP for resolution, including to final, binding arbitration, if necessary. *See* Exs. 2 and 4 at 1 (both stating "[b]y continuing or accepting an offer of employment, all employees to whom this policy is applicable agree as a condition of employment to submit all covered claims to the Hallmark DRP and to accept an arbitrator's (or arbitrators') award as the final, binding, and exclusive determination of all covered claims"). In other words, both the Original DRP and the Amended

DRP constituted offers, and Plaintiff's continuation of her employment with Hallmark after their effective dates -- including her enjoyment of the benefits attendant to that employment for seven years after adoption of the Original DRP and for five years after adoption of the Amended DRP -- constituted acceptance and consideration.

In *Kerr v. Dillard Store Services, Inc.*, the court concluded that "A party who seeks to enforce an arbitration agreement must provide evidence that the party to be bound had actual notice of the policy that continued employment constitutes agreement to the terms of the arbitration." 2009 WL 2525582, at *4 (D. Kan. Aug. 17, 2009). Here, Hallmark provides such evidence through the Affidavit of Gilbert C. Lloyd (Ex. 1) and the exhibits authenticated therein, which demonstrates that:

- With a cover letter from Ralph Christensen, Hallmark mailed a copy of the Original DRP, the Program Highlights, and the Summary to Plaintiff in December 2001, which mailing was not returned as undeliverable.

- Each of the enclosures to Mr. Christensen's letter makes clear that continued employment constituted agreement to the terms of the DRP.

- In 2003, Hallmark advised employees twice through the Noon News and a letter from David E. Hall that Hallmark included in Plaintiff's bi-weekly direct deposit of changes to the DRP.

- Through the changed DRP, Hallmark reminded employees that continued employment constituted agreement to the terms of the DRP.

- Through its policies, Hallmark reminded its employees that "all [of them] must use the DRP to resolve workplace disputes."

*See* Lloyd Aff. (Ex. 1) ¶ 3; *see also* Exs. 5-11.

As the foregoing demonstrates, there is undoubtedly an enforceable agreement to arbitrate here. To confirm that, the Court needs look no further than to *Kenney* (Ex. 15) and *Rangel* (Ex. 16), both of which enforced the very arbitration agreement at issue here. In each case, the court correctly concluded that -- through the Amended DRP -- the parties had entered into a valid, enforceable agreement to arbitrate.

*Durkin v. CIGNA Prop. & Cas. Corp.*, 942 F. Supp. 481 (D. Kan 1996), confirms that fact. In *Durkin*, the plaintiff argued that her employer's mandatory arbitration program was not enforceable because she did not sign or expressly acknowledge an agreement to be bound by the program. The court disagreed, noting that it is not necessary that there be a signed writing containing an arbitration clause; instead, the only writing requirement is that the arbitration *provision* be in writing. *Id.* at 487. Further, the court held that the plaintiff, an at-will employee, had actual notice of the arbitration policy, and the policy was expressly deemed to be part of the employment relationship. *Id.* at 488. *Durkin* controls here. *See, e.g., Kenney*, 2009 WL 102682 (Ex. 15) (enforcing the Amended DRP); *see also Rangel* (Ex. 16) (enforcing the Amended DRP).

2.     *No Grounds Exist for Revocation of the DRP.*

Hallmark is not aware of any basis or bases for revocation of the DRP. Additionally, Plaintiff has not raised any specific objections to the applicability or enforceability of the DRP.

C.     <u>Under Equitable Estoppel Principles, Plaintiff's STD Claim Against Assurant Is also Subject to the DRP.</u>

Admittedly, Assurant is not a party to the DRP. However, the determination of whether Assurant "breached" a contract with Plaintiff is necessarily intertwined with whether Hallmark "breached" a contract with Plaintiff: both claims derive from the determination of whether

Plaintiff was eligible for STD benefits under the same STD policy. Additionally, Hallmark has agreed through its contract with Assurant to indemnify Assurant. *See* Ex. 4 at Section VII.

Kansas courts have recognized that "a nonsignatory to the arbitration agreement may compel a party that signed the arbitration provision to arbitrate a claim that closely intertwined with ones covered by the arbitration provision." *See Hemphill v. Ford Motor Co.*, 206 P.3d 1, 9 (Kan. Ct. App. 2009). In so doing, Kansas courts have followed the great weight of authority. *See id.* (citing "at least seven federal circuits have recognized" the same principle) (case cites omitted).

As the court explained in *Hemphill*, "it boils down to how close a connection exists between the claims explicitly subject to arbitration and those involving the party that didn't sign the arbitration agreement." *Id.* Here, that connection is clear. In her Amended Petition, Plaintiff is challenging Hallmark's decision to deny her claim for STD benefits and Assurant's like decision, which it made via contract with Hallmark based on Hallmark's policy and for which Hallmark is ultimately responsible. *See* Ex. 4 at Section VII. As such, Plaintiff's claims against Assurant are arbitrable if her claims against Hallmark are. *See id.*

### III. Plaintiff's LTD Claim Fails to State a Claim.

Plaintiff's LTD claim fails to state a claim against Defendants because (1) any such claim is not ripe; (2) neither Hallmark nor Assurant is a proper defendant to any such claim; and (3) ERISA § 502(a)(1)(B) provides an adequate remedy, and the relief sought is not available pursuant to ERISA § 502(a)(3). As such, the Court should dismiss those claims.

#### A.   Plaintiff's LTD Claim Is Not Ripe.

The Court should dismiss Plaintiff's claim for LTD benefits because Plaintiff's claim is not ripe. Under the LTD plan, Plaintiff is ineligible for LTD benefits until she has been

"disabled" for 180 days or the hourly equivalent of six months, and only those absences that are determined to be eligible for STD benefits or workers' compensation benefits count toward the 180-day eligibility requirement. *See* Ex. 13 at 133; Ex. 14 at § 3.3.1..

In other words, Plaintiff's LTD claim is utterly dependent on resolution of her STD claim. If Plaintiff's STD claim is dismissed or resolved against her at arbitration, then her LTD claim necessarily fails: she will not have achieved eligibility for LTD benefits. If, on the other hand, her STD claim moves forward, then a determination of her STD entitlement may likewise render her LTD claim a failure: if she is determined to be entitled to less than 180 days (or 1040 hours), then she still will not have achieved eligibility for LTD benefits. Accordingly, Plaintiff's LTD claim is not ripe and is not properly before the Court.

Indeed, in *Schwob v. Standard Insurance Co.*, the Tenth Circuit encountered a similar procedural posture. 37 F. App'x 465 (10th Cir. 2002). There, Standard agreed to reopen the administrative record and reconsider its decision to deny benefits. *See id.* at 467 As a result, the Tenth Circuit concluded plaintiff's ERISA action was not properly before the lower court. *See id.* at 470 (case ceased to be ripe when Standard informed the district court that it was in the process of reviewing additional medical information submitted by plaintiff). Additionally, the Tenth Circuit concluded that postponing judicial review at that point would not have caused hardship to the plaintiff, but engaging in judicial review "would have inappropriately interfered with the continuing administrative process . . . ." *Id. See also McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir. 1998)(premature judicial interference with the interpretation of a plan impedes the plan's internal processes of decision-making).

The same holds true here. As pointed out above, if Plaintiff prevails on her STD claim and then obtains the requisite STD benefits to be eligible for LTD benefits, she will at that point

have to re-apply for such benefits.  With any such re-application, the administrative record will have to be re-opened, and a determination will have to be made as to whether Plaintiff is then eligible for LTD benefits.  Under *Shwob*, then, the Court should dismiss Plaintiff's LTD claim as not ripe and not properly before it.

> **B.**     Neither Hallmark nor Assurant Are Proper Defendants to Plaintiff's LTD Claim.

ERISA § 502(a)(1)(B) permits a participant or beneficiary to assert a claim for benefits to enforce rights under the terms of the plan or to clarify rights to future plan benefits.  29 USC § 1132(a)(1)(B).  The proper defendant in a claim for benefits brought pursuant to ERISA § 502(a)(1)(B) is the plan.  *See Jass v. Prudential Health Care Plans, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (ERISA permits suits to recover benefits against the plan as an entity).  This is supported by the fact that a money judgment against a plan is enforceable only against the plan as an entity. 29 U.S.C. § 1132(d)(2); *see also Hubbert v. Prudential Ins. Co.*, No. 96-1093, 1997 WL 8854, at *3 (10th Cir. 1997).

Plaintiff has brought her suit against Hallmark (her employer and the Plan's corporate sponsor) and Assurant (a service provider to the Plan).[7]  Courts have routinely held that an employer is not a proper party to a claim brought pursuant to ERISA § 502(a)(1)(B).  *See Layes v. Mead Corp.*, 132 F.3d. 1246, 1249 (8th Cir. 1998).  Similarly, a claims administrator, like Assurant, is not a proper defendant.  *See Klover v. Antero Health Plan*, 64 F. Supp. 2d 1003, 1011 (D. Colo. 1999) (a plaintiff cannot bring a claim for benefits against a third party administrator).  Accordingly, neither Hallmark nor Assurant are proper parties to Plaintiff's claim for LTD benefits, and those claims should be dismissed.

---

[7]In her Amended Petition, Plaintiff acknowledges that Assurant is a "service provider." *See* Ex. 12 ¶ 43.

C.     The Court Should Dismiss Count II of Plaintiff's Complaint Because the Relief
        Sought Is Unavailable.

In her "Prayer for Relief" (Ex. 12 at 10-11), Plaintiff alleges the "defendants failures

breach defendants' fiduciary duties to act solely in the interest of Plan participants." *See* Ex. 12 ¶

11.   Plaintiff's predominant ERISA claim is her claim for LTD benefits pursuant to ERISA §

502(a)(1)(B).  In *Variety Corp. v. Howe*, 516 U.S. 489, 510-15 (1996), the United States Supreme

Court stated that a plaintiff may bring a private action for breach of fiduciary duty only when no

other remedy is available under ERISA § 502 (29 U.S.C. § 1132).  *See also Hyde v. Benicorp Ins.*

*Co.*, 363 F. Supp. 2d 1304, 1309 (D. Kan. 2005); *Talkin v. Deluxe Corp.*, 05-2305-CM, 2007 WL

149648, at *10-11 (D. Kan. May 18, 2007).  ERISA § 502(a)(1)(B) provides an adequate remedy

in that the Court could award benefits to the plaintiff.

Furthermore, the relief sought by Plaintiff is not available pursuant to a claim for breach

of fiduciary duty.  An ERISA claim for breach of fiduciary duty is brought pursuant to ERISA

§ 502(a)(3).  Under ERISA § 502(a)(3), a participant may bring a civil action to (1) enjoin any

act or practice that violates any provision of Title I of ERISA or the terms of the plan, or (2)

obtain other appropriate equitable relief to redress such violations or enforce any provisions of

Title I of ERISA or the terms of the plan.

The United States Supreme Court has repeatedly emphasized that Congress did not intend

to authorize other remedies that are not expressly incorporated into the enforcement mechanism.

*See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).   A claim for benefits is not an

equitable claim.  Therefore, Plaintiff is precluded from seeking benefits under a claim for breach

of fiduciary duty.   *See Hicks-Wagner v. Quest, Inc.*, 462 F. Supp. 2d 1163, 1170-71 (D.N.M.

2006).  Because Plaintiff has an adequate remedy pursuant to her benefit claim, her allegation of breach of fiduciary duty should be dismissed or stricken.

CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing all of Plaintiff's claims or dismissing Plaintiff's LTD claims and ordering her STD claims to final, binding arbitration.

Respectfully submitted,

Jeffrey D. Hanslick          KS Bar No. 22612
Husch Blackwell Sanders LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone:    (816) 983-8000
Facsimile:   (816) 983-8080
**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document was filed electronically and that notice of this filing will be sent via the Court's ECF notification and U.S. mail this 9th day of April, 2010:

James L. Wisler
Wisler & Trevino
1311 Wakarusa Drive, Suite 2200
Lawrence, KS  66049

ATTORNEYS FOR PLAINTIFF

ATTORNEY FOR DEFENDANTS